J-S85016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF P.K.K., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.C.J., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1151 EDA 2016 |

Appeal from the Decree March 7, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  CP-51-AP-0000668-2014,
CP-51-DP-0000993-2013

| | | |
|---|---|---|
| IN THE THE INTEREST OF: J.Z.K., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.C.J., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1152 EDA 2016 |

Appeal from the Decree March 7, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  CP-51-AP-0000669-2014,
CP-51-DP-0000994-2013

BEFORE:  PANELLA, J., RANSOM, J., and MUSMANNO, J.

MEMORANDUM BY RANSOM, J.:                    **FILED JANUARY 09, 2017**

Appellant, R.C.J., ("Mother"), appeals from the decree in the Philadelphia County Court of Common Pleas, which terminated her parental rights to her minor children, P.K.K. and J.Z.K.  Counsel for Mother has also filed with this Court both a petition for leave to withdraw as counsel and a brief pursuant to **Anders v. California**, 87 S. Ct. 1396 (1967).  We grant

counsel's petition for leave to withdraw and affirm the decision of the trial court.

In May 2013, the Department of Human Services ("DHS") received a General Protective Services ("GPS") report which alleged that Mother was wandering the street with her children, while high on "wet".[1] Mother was transported to Albert Einstein Medical Center ("AEMC") and, once stabilized, transferred to Germantown Crisis Response Center ("CRC"). The children were transported to DHS by police. DHS was unable to locate any family members, and the children were temporarily placed at Baring House until DHS was able to locate an appropriate placement for the children. The GPS report was substantiated. Upon discharge from Germantown CRC, Mother arrived at DHS and denied illegal drug use. Mother further stated that she was diagnosed as suffering from anxiety, depression, and bipolar disorder for which she was prescribed clonazepam and lamotrigine.

In May 2013, DHS obtained an Order of Protective Custody ("OPC") for the children, and they were placed in a foster home through Children's Choice. A Shelter Care Hearing was held in May of 2013, at which time the court lifted the OPC and ordered the temporary commitment to stand. Mother was referred the Clinical Evaluation Unit ("CEU") for a drug screen, an assessment, and monitoring. (Shelter Care Order, 5/15/13). At the

_____

[1] We derive the following facts from the trial court opinion which is supported by the record. **See**, Trial Court Opinion, 6/17/16 at 2-13.

Adjudicatory Hearing, the court discharged the temporary commitment, adjudicated the children dependent, and committed them to DHS. The court further ordered that (1) a Family Service Plan ("FSP") meeting be held within 30 days; (2) Mother be granted weekly supervised visitation; (3) Mother to continue with treatment through Community Organization for Mental Health and Retardation ("COMHAR"); (4) that Mother comply with the scheduled CEU appointment; and (5) that Mother be re-referred to CEU for a forthwith drug screen and monitoring. (Orders of Adjudication and Disposition 5/21/13)

In August 2013, the CEU submitted a report of non-compliance as to Mother, which stated that Mother was evaluated in June 2013, and the treatment recommendation was for Mother to attend a short term dual diagnosis program. Mother failed to attend her intake appointment at Gaudenzia Together House for Women. The report further stated that Mother tested positive on May 15, 2013, for phencyclidine ("PCP"), and on May 21, 2013, tested positive for PCP and marijuana. Mother continued to test positive for PCP in June 2013, August 2013, November 2013, March 2014, and June 2014. Mother failed to comply with subsequent orders for drug screens and assessments. DHS filed goal change to adoption petitions and petitions for involuntary termination of parental rights on December 1, 2014. After several continuances, the goal change termination hearing was held on March 7, 2016.

By decree dated March 7, 2016, the trial court terminated Mother's parental rights and changed the goal to adoption. In April 2016, Mother's counsel timely filed a notice of appeal on Mother's behalf as well as a statement pursuant to Pa.R.A.P. 1925(b). On July 18, 2016, Mother's counsel filed an application to withdraw as counsel and a brief pursuant to **Anders**.

The **Anders** brief raises the following issues on appeal:

(1)     The trial court erred in finding Mother did not meet her objectives regarding drug and alcohol treatment and drug testing as Mother asserts that she did not intentionally use any controlled substance at the time she was drug tested by order of the court.

(2)     The trial court erred in finding that the foster mother has a strong bond with the children. Mother argues that her children are bonded with her and not to foster mother.

Appellant's Brief at 12.

Initially, we address the **Anders** brief and petition seeking permission to withdraw. The principles that guide our review are as follows:

> When counsel files an **Anders** brief, this Court may not review the merits without first addressing counsel's request to withdraw. **Commonwealth v. Washington**, 63 A.3d 797, 800 (Pa. Super. 2013). In **In re V.E.**, 611 A.2d 1267 (Pa. Super. 1992), this Court extended **Anders** principles to appeals involving the termination of parental rights. **Id.** at 1275. In these cases, counsel appointed to represent an indigent parent on a first appeal from a decree involuntarily terminating parental rights may petition this Court for leave to withdraw representation and submit an **Anders** brief. **In re S.M.B.**, 856 A.2d 1235, 1237 (Pa. Super. 2004). We review counsel's **Anders** brief for compliance with the requirements set forth by our Supreme Court in **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

[W]e hold that in the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Id.* at 361.

Additionally, pursuant to **Commonwealth v. Millisock**, 873 A.2d 748 (Pa. super. 2005) and its progeny, "[c]ounsel also must provide a copy of the **Anders** brief to his client. Attending the brief must be a letter that advises the client of his right to: (1) retain ne counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the **Anders** brief." **Commonwealth v. Orellana**, 86 A.3d 877, 880 (Pa. Super. 2014) (internal quotation marks and citation omitted). "Once counsel has satisfied the above requirements it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." **Commonwealth v. Goodwin**, 928 A.2d 287, 291 (Pa. Super. 2007) (*en banc*), quoting **Commonwealth v. Wright**, 846 A.2d 730, 736 (Pa. Super. 2004).

**In re X.J.**, 105 A.3d 1, 3-4 (Pa. Super. 2014).

Here, we conclude that Mother's counsel has complied with the requirements as set forth above.[2] Counsel has provided Mother with a copy

_____

[2] Counsel should have included citations when he discussed facts of record. **See Santiago**, 978 A.2d at 361. Counsel is advised to adhere more closely to the requirements as set forth in **Santiago** in the future.

of the **Anders** brief and indicated in his correspondence that Mother may proceed *pro se* or retain new counsel. In his brief, counsel references facts of record that might arguably support Mother's appeal and sets forth his conclusion that the appeal is frivolous. **See Anders** Brief at 11-13. Accordingly, we undertake our independent review of the record to determine whether Mother's appeal is wholly frivolous.

Our review of an order granting a petition for involuntary termination of parental rights is well settled:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determination fo the trial court if they are supported by the record. **In re: R.J.T.**, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. **Id.;** [**In re**] **R.I.S.**, [36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. **Id.**, **see also Samuel Bassett v. Kia Motors America, Inc.**, 34 A.3d 1, 51 (Pa. 2011); **Christianson v. Ely**, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. **Id.**
>
> As we discussed in **R.J.T.**, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observe that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and the parents. **R.J.T.**, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and

termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012).

"[T]he burden is upon [the petitioner] to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (*quoting In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

The trial court terminated Mother's parental rights under sections 2511(a)(1), (2), (5), (8) and 2511(b). This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 20014) (*en banc*). As such we will focus on 2511(a)(2) and 2511(b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a)** **General rule.** – The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

    (2)    The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*     \*     \*

**(b) Other considerations.** – The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6), or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

We first examine the court's termination of Mother's parental rights pursuant to Section 2511(a)(2). This Court has previously addressed termination under this provision, stating,

> Parental rights may be terminated under Section 2511(a)(2) if three conditions are met: (1) repeated and continued incapacity, abuse, neglect or refusal must be shown; (2) such incapacity, abuse, neglect or refusal must be shown to have caused the child to be without essential parental care, control or subsistence; and (3) it must be shown that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. **In re Geiger**, 459 Pa. 636,, 331 A.2d 172, 174 (1975).

**In re E.A.P.**, 944 A.2d 79, 82 (Pa. Super. 2008). "The grounds for termination due to parental incapacity that cannot be remedied are not

- 8 -

limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015) (quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002)).

The evidence of Mother's unwillingness and unfitness to exercise parental responsibility within the meaning of Section 2511(a)(2) is well-documented in the record. The children came into care due to Mother's substance abuse. Notes of Testimony (N.T.) 3/7/16, 10-11. Mother's objectives were to comply with case management services, comply with drug and alcohol services, reengage and comply with mental health services, reengage and comply with ARC ("Achieving Reunification Center"), and comply with supervised visitation. *Id.* Mother was referred to the CEU to comply with the drug and alcohol objectives; however, she continually tested positive for PCP. *Id.* While Mother did complete anger management and consistently visited the children, she failed to obtain stable housing or comply with ARC. *Id.* at 11-13. Given Mother's inability to resolve her substance abuse issues, she has not remedied the issue which caused the children to come into care. The record demonstrates Mother's continued incapacity and inability to resolve these issues has caused the children to be without the essential parental control necessary for their physical and mental well-being.

As there is clear and convincing evidence in the record that supports the trial court's termination of Mother's parental rights under Section

2511(a)(2), we affirm the trial court's decision. *In re Adoption of S.P.*, 47 A.3d at 826-827.

After we determine that the requirements of Section 2511(a) are satisfied, we proceed to review whether the requirements of Section 2511(b) are satisfied. *See In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). Pursuant to Section 2511(b), the court, in terminating the rights of a parent, shall give primary consideration to the developmental, physical, and emotional needs and welfare of a child.

Jared Burr, CUA case manager from Wordsworth 5, testified that he observed Mother during visits and the quality of visits was inconsistent. N.T. at 13. Mother would take out her anger on the children and, while she helped the children with their homework, she had little patience so the quality of visits suffered. *Id.* at 13-14. Mr. Burr further testified that due to Mother's inability to control the children's behavior, J.Z.K. displayed behavior issues and P.K.K. shut down during visits. *Id.* at 14.

The children have been with the same pre-adoptive Children's Choice foster parent since May 2013. *Id.* at 15. Mr. Burr testified that they have a strong bond with the foster mother and call her "Mom." *Id.* Mr. Burr testified that neither P.K.K. nor J.Z.K. would suffer irreparable harm if Mother's parental rights were terminated. *Id.* at 14. He further testified that adoption would be in the children's best interest. *Id.* 15.

Upon review, we find no abuse of discretion in the trial court's termination of Mother's parental rights. Our independent review of the

record reveals no non-frivolous claims that Mother could have raised, and we agree with Counsel that this appeal is wholly frivolous. We therefore affirm the termination decree and grant Counsel's petition to withdraw.

Decree affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/9/2017